IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY D. SODER, | : | |
| Plaintiff, | : | |
| | : | Civil No. 4:07-CV-1851 |
| v. | : | |
| | : | Judge John E. Jones III |
| J. MICHAEL WILLIAMSON, *et al.* | : | |
| Defendants | : | |

## MEMORANDUM

August 7, 2008

This case is before the Court upon the motions to dismiss of defendants

Charles Frederick Chenot III, Carl Nace, Aaron Richards, Donald Smith, David

Yeingst, and Warden Long (Doc. 13); J. Michael Williamson (Doc. 21); and Chad

Tate (Doc. 24). For the reasons set forth below, all three motions will be granted

and this action dismissed.

## I.   STANDARD OF REVIEW

The defendants' motions challenge the legal sufficiency of the plaintiff's

complaint under Federal Rule of Civil Procedure 12(b)(6). In considering a

motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations

as true, construe the complaint in the light most favorable to the plaintiff, and

determine whether, under any reasonable reading of the complaint, the plaintiff

may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d

Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir.

2002)).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the

pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain

a short and plain statement of the claim showing that the pleader is entitled to

relief, "in order to give the defendant fair notice of what the claim is and the

grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, --- U.S. ----, 127 S. Ct.

1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Id.* at 1965.   A

plaintiff must make "a 'showing' rather than a blanket assertion of an entitlement

to relief", and "without some factual allegation in the complaint, a claimant cannot

satisfy the requirement that he or she provide not only 'fair notice,' but also the

'grounds' on which the claim rests." *Phillips*, 515 F.3d at 232 (citing *Twombly*,

127 S. Ct. at 1965 n. 3). "[A] complaint must allege facts suggestive of [the

proscribed] conduct, and the "[f]actual allegations must be enough to raise a right

2

to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965, 1969 n.8.

Therefore, "stating a claim requires a complaint with enough factual matter (taken

as true) to suggest the required element." *Phillips*, 515 F.3d at 234 (quoting

*Twombly*, 127 S. Ct. at 1965 n. 3).

On the other hand, "a complaint may not be dismissed merely because it

appears unlikely that the plaintiff can prove those facts or will ultimately prevail

on the merits." *Id.* at 231 (citing *Twombly*, 127 S. Ct. 1964-65, 1969 n.8).  Rule 8

"does not impose a probability requirement at the pleading stage, but instead

simply calls for enough facts to raise a reasonable expectation that discovery will

reveal evidence of the necessary element." *Id.* at 234.

## II.   BACKGROUND

With this standard of review in mind, the following are the facts derived

from the complaint for the purposes of the current motions, accepting as true all

factual allegations and construing the complaint in the light most favorable to the

plaintiff. *Phillips*, 515 F.3d at 231.

The *pro se* plaintiff Jeffery Dale Soder alleges violations of various of his

constitutional rights by several state and local officials. (Compl., Doc. 1, ¶¶ II,

III.)  Soder first states that on March 26, 2007, the Honorable J. Michael

Williamson, a judge of the Court of Common Pleas of Clinton County,

3

Pennsylvania, issued a warrant for his arrest. (*Id.* at ¶ VI.) Without stating why,

Soder alleges that this arrest warrant was in violation of the Fifth, Sixth, Eighth,

Ninth, Eleventh, and Fourteenth Amendments to the United States Constitution.

(*Id.*) Soder next alleges that, on March 27, 2007, in reliance on the arrest warrant,

defendants Tate, Richards, and Smith arrested him at his residence in violation of

the Fourth Amendment. (*Id.* at ¶ VII.) Soder then alleges that defendant Yeingst,

the warden of the Perry County Correctional Facility, "excepted [sic] this as a

normal arrest and detention." (*Id.* at ¶ VIII.)

Soder then alleges that Warden Yeingst, Deputy Warden Long, and Perry

County District Attorney Charles Chenot III are in violation of the Federal

Standards of Prisons because of the conditions at the Perry County Correctional

Facility. (*Id.* at ¶ IX.) Soder's complaint proceeds chapter by chapter through the

Federal Standards, although for a large number of chapters Soder, quite candidly,

admits that there is "no issue." (*See, e.g., id.* at ¶¶ XIV, XV, XXII, XXIV, XXVI.)

Soder first alleges that he refused to take a tuberculosis test because "inject[ing] a

Culture of a Known Disease ... into the Body of the Plaintiff ... would be in

violation of his Hebrew beliefs." (*Id.* at ¶ X.) Soder demanded a chest x-ray

instead, which he received 24 days later. (*Id.*) Soder claims that this incident

violated his First Amendment right to free exercise of religion. (*Id.*) Next, Soder

4

complains that he was not the sole occupant of his cell and that he was denied exercise time for the 24 days he was in segregation while awaiting his chest x-ray. (*Id.* at ¶¶ XI, XXV.) Next, Soder complains that, during his time at the prison, he never participated in a fire drill, that his bed linens were stained, and that he was only provided a clean towel twice a week. (*Id.* at ¶ XII.) Next, Soder complains that the food was cold. (*Id.* at ¶ XIII.) Next, Soder complains that prison supervisors did not visit his cell weekly. (*Id.* at ¶ XVI.) Next, Soder complains that he was denied phone privileges for the 24 days he was in segregation while awaiting his chest x-ray. (*Id.* at ¶ XX.) Next, Soder appears to allege that he was denied family visitation. (*Id.* at ¶ XXI.) Next, Soder alleges he was passed over for work release programs. (*Id.* at ¶ XXIII.) Next, Soder alleges that the prison library was inadequate because there were partial volumes of some books, because he could not save work on the computer, and because he had to pay to print material. (*Id.* at ¶ XXVII.) Finally, Soder appears to allege that it was too easy to leave the facility upon his release. (*Id.* at ¶ XXIX.)

As relief, Soder asks that he be awarded $1 million for damage to his "life, reputation, and credibility"; $12 million in punitive damages, treble damages, and $250,000 for "lack of consortium." (*Id.* at ¶ XXXI.) Soder's prayer for relief also references the RICO statute, 18 U.S.C. § 1961. (*Id.*)

5

## III.   DISCUSSION

### A.   Judge Williamson

Soder's claims against Judge Williamson must be dismissed on the ground

of absolute judicial immunity.  Judges have absolute immunity from § 1983

actions seeking money damages for actions performed in a judicial capacity.

*Mireles v. Waco*, 502 U.S. 9 (1991); *Stump v. Sparkman*, 435 U.S. 349 (1978).  As

Judge Williamson was acting in a judicial capacity in issuing a warrant for Soder's

arrest (*see* Doc. 13-3 at 2), Soder's claims against Judge Williamson are not

actionable under § 1983 and will be dismissed.

### B.   District Attorney Chenot

Soder's claims against District Attorney Chenot will be dismissed for failure

to allege personal involvement.  "An individual government defendant in a civil

rights action must have personal involvement in the alleged wrongdoing; liability

cannot be predicated solely on the operation of respondeat superior.  Personal

involvement can be shown through allegations of personal direction or of actual

knowledge and acquiescence."  *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir.

2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

Chenot is named only in the paragraphs of the complaint relating to the conditions

of the Perry County Correctional Facility.  Soder does not allege, however, that

Chenot had any personal involvement in or responsibility for the conditions of the prison.

Moreover, to the extent that Soder's claims against Chenot are based on the prosecution which put Soder in the Perry County prison, Chenot is protected by prosecutorial immunity. Absolute immunity allows prosecutors to exercise their own independent judgment in "deciding which suits to bring and in conducting them in court," so that prosecutors' decisions are not based on a fear of potential liability in a suit for damages. *Imbler v. Pachtman*, 424 U.S. 409, 424 (1976). Such immunity extends to all functions "intimately associated with the judicial phase of the criminal process." *Id.* at 430. To the extent that Soder alleges Chenot is liable for allegedly unconstitutional conditions at the prison because Chenot was the prosecutor that put him there, Soder's claims are barred by immunity.

## C.   *Heck* Doctrine

Several paragraphs of Soder's complaint may be read as alleging a challenge to the conviction which resulted in his confinement in the Perry County prison in the first place. (*See* Compl. ¶¶ VI-IX, XV, XXII, XVI, XXVIII.) Any such claims are barred by the *Heck* doctrine.

Under the doctrine acknowledged by the Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994), a civil rights plaintiff may not bring a

constitutional claim "if success in that action would necessarily demonstrate the invalidity of the confinement or its duration," *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005), unless the plaintiff proves the sentence of confinement "has been reversed on direct order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus," *Heck*, 512 U.S. at 486-87. Soder has not proved that his conviction was reversed, invalidated, or called into question by a federal court, and therefore, to the extent that his claims in the present action are premised on the invalidity of his conviction, they are barred by the *Heck* doctrine.[1]

### D.     Officer Tate, Sheriff Nace, and Deputies Richards and Smith

Soder alleges that Newport police officer Chad Tate, Perry County Sheriff Charles Nace and Deputies Aaron Richards and Donald Smith violated his Fourth Amendment rights by arresting him at his home based on the warrant issued for his arrest.[2,3] The Fourth Amendment prohibits unreasonable searches and seizures in

---

[1] The Court will take judicial notice of the fact that Soder's habeas corpus petition related to the conviction which led to his incarceration in the Perry County prison was denied. *See Soder v. Williamson*, 07-cv-695 (M.D. Pa), Order of May 27, 2008.

[2] Although Sheriff Nace is named and described as a defendant (*see* Compl. ¶¶ II, V), he is not mentioned in the substantive paragraphs of the complaint. Soder's claims against Sheriff Nace will therefore also be dismissed because they are based on the impermissible theory of respondeat superior. *See Evancho*, 423 F.3d at 353.

[3] Officer Tate, Sheriff Nace, and Deputies Richards and Smith are substantively mentioned only in paragraph VII of the complaint alleging a Fourth Amendment violation. They

the absence of probable cause. The existence of a facially valid warrant establishes the probable cause necessary for an officer to execute an arrest without violating the Fourth Amendment.[4] *See Baker v. McCollan*, 443 U.S. 137, 142-46 (1979); *see also Berg v. County of Allegheny*, 219 F.3d 261, 273 (3d Cir. 2000) ("Ordinarily, it is reasonable for an officer to assume that a warrant has been issued for probable cause.... Therefore, we have generally extended immunity to an officer who makes an arrest based on an objectively reasonable belief that there is a valid warrant."). The warrant pursuant to which Soder was arrested is facially valid (*see* Doc. 13-3), and Soder does not allege any circumstances that demonstrate the officers' reliance on the warrant was unreasonable. Soder has failed to state a Fourth Amendment claim against the officers.[5]

---

are not mentioned in any of the paragraphs alleging claims arising out of the conditions at the Perry County prison, and therefore, the Court will construe Soder's claims against these defendants as only a Fourth Amendment claim.

[4] To the extent Soder claims the Fourth Amendment was violated because he was arrested at his home, his claim is clearly foreclosed by Supreme Court precedent. *See Payton v. New York*, 445 U.S. 573, 603 (1980) (holding that "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within")

[5] Alternatively, the Court would find the officers entitled to qualified immunity based on their objectively reasonable belief that a valid warrant existed for Soder's arrest. *See Berg*, 219 F.3d at 272-73.

### E.   Warden Yeingst and Deputy Warden Long

#### 1.   Personal Involvement

As is the case with his claims against District Attorney Chenot, Soder's claims against Warden Yeingst and Deputy Warden Long will be dismissed for failure to allege personal involvement.  Soder has not alleged that these defendants directed or had actual knowledge of any of the conditions about which he complains, and it is clear that Soder has named them as defendants solely because they are the warden and deputy warden of the prison.  These § 1983 claims, impermissibly based on a theory of respondeat superior, will be dismissed.  *See Evancho*, 423 F.3d at 353.

#### 2.   Fourth Amendment Claim

Soder alleges that Warden Yeingst was "an accomplice to the illegal Arrest, illegal Detention and Kidnapping of the Plaintiff."  To the extent Soder means to assert a Fourth Amendment false imprisonment claim against Warden Yeingst, his claim is dismissed for the same reasons as his Fourth Amendment claims against the arresting officers:  Soder's arrest was supported by probable cause.

#### 3.   Free Exercise Claim

Soder next alleges that his First Amendment right to the free exercise of religion was violated by the fact that he waited 24 days for a chest x-ray after

refusing to take a tuberculosis test on the grounds that doing so would violate his "Hebrew beliefs." As an initial matter, Soder has failed to state a free exercise claim, even assuming the tuberculosis test violated a tenet of the "Hebrew beliefs" to which Soder sincerely adheres, because he was not required to take the test. Instead, Soder's beliefs were accommodated, and an alternative test, the x-ray, was administered. *See Hughes v. Chesney*, 2005 WL 2300353 (M.D. Pa. Sept. 21, 2005) (holding prisoner plaintiff, who claimed that his First Amendment right to practice religion was violated prison administered him a tuberculosis test which contained a pork derivative, failed to state a claim because plaintiff was given an alternative test that contained no pork). Soder's failure to state a claim is especially clear in light of cases holding that prisons may forcibly require prisoners to take a tuberculosis test even in light of religious objections to the test. *See, e.g., Africa v. Horn*, 998 F. Supp. 557 (E.D. Pa. 1998); *Karolis v. N.J. Dep't of Corr.*, 935 F. Supp. 523 (D.N.J. 1996).

To the extent Soder means to argue his free exercise rights were violated because he had to wait 24 days in segregation for the x-ray, he also fails to state a claim. The requirement that Soder remain in segregation until it could be determined whether he was infected with tuberculosis is reasonably related to the prison's legitimate penological interest in preventing the spread of contagious

disease to staff and other inmates. *See Turner v. Safley*, 482 U.S. 78 (1987); *see also Africa*, 998 F. Supp. at 559-60 (upholding prisoner's segregation for twelve-month observation period after chest x-ray for tuberculosis). Soder was provided with an alternative that fully accommodated the exercise of his religious beliefs. Soder's apparently suggested alternative -- his preferred tuberculosis test on demand – would impose untenable demands on prison resources. *See Monroe v. Beard*, --- F.3d ----, 2008 WL 2896615, at *4-5 (3d Cir. July 29, 2008) (discussing *Turner* factors).

### 4.   RLUIPA Claim

Soder does not mention the Religious Land Use and Institutionalized Persons Act ("RLUIPA") in his complaint or any submission in this action. However, the Third Circuit has suggested that, where appropriate, district courts should liberally construe *pro se* prisoner complaints alleging a free exercise claim to also allege an RLUIPA claim. *See Heleva v. Kramer*, 214 Fed. Appx. 244, 247 n.2 (3d Cir. 2007); *Smith v. Johnson*, 202 Fed. Appx. 547, 549 (2006). *But see Scott v. Beard*, 252 Fed. Appx. 491, 493 (3d Cir. 2007) (refusing to construe complaint alleging only due process violations by defendant as also alleging RLUIPA claim). The Court will, therefore, also analyze Soder's complaint under RLUIPA.

RLUIPA provides, in relevant part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a).  To state an RLUIPA claim, a plaintiff bears the prima facie burden of showing that a prison policy or practice has substantially burdened the practice of that inmate's religion.  42 U.S.C. § 2000cc-2(b); *Washington v. Klem*, 497 F.3d 272, 277-78 (3d Cir. 2007).   The Third Circuit has adopted the following definition of "substantial burden" in this context:

> For the purposes of RLUIPA, a substantial burden exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.

*Washington*, 497 F.3d at 280.  Soder has not met this burden.  He was not forced to choose between following his religion and following prison policy, and he was never pressured to modify his religious practice or beliefs by the defendants.  To the contrary, Soder's religious practice and beliefs were accommodated by prison

13

staff, and Soder received the exact alternative he requested.  Soder has not

established that prison policy substantially burdened the practice of that his

religion, and therefore, to the extent that his complaint can be construed to assert

an RLUIPA claim, that claim will be dismissed.

Moreover, even assuming Soder could sustain his prima facie burden, his

arguably asserted RLUIPA claim would still fail because the prison's requirement

that he receive a chest x-ray and remain in segregation for a reasonable period

until this test was performed is the least restrictive means of furthering a

compelling governmental interest.  *See Karolis*, 935 F. Supp. at 527-29 (rejecting

state inmate's challenge to prison's injection tuberculosis screening test under the

Religious Freedom Restoration Act).  The state has a clear and compelling interest

in detecting disease, particularly diseases as highly contagious and potentially

dangerous as tuberculosis, and preventing the spread of disease through staff and

inmates.  *Id.* at 527-28; *see also Africa*, 998 F. Supp. at 559-60.  Skin testing is the

preferred and most effective method of screening for tuberculosis, *Karolis*, 935 F.

Supp. at 528-29; *Africa*, 998 F. Supp. at 560, and courts have found this method to

be the least restrictive method of achieving the government's compelling interest

in preventing infectious diseases in prisons, *Karolis*, 935 F. Supp. at 528-29.  In

this case, however, an even less restrictive method, a chest x-ray, was employed.

This was, in fact, the method Soder himself requested.  The defendants here cannot be found to have violated RLUIPA by providing Soder with his chosen means of accomplishing a compelling government interest.

### 5.    Eighth Amendment Claims

The bulk of the claims against Warden Yeingst and Deputy Warden Long arise from the conditions of the Perry County prison.  Although Soder phrases these claims as violations of the Federal Standards for Prisons and Jails, the Court will construe them as Eighth Amendment conditions of confinement claims.

As an initial matter, violations of the Federal Standards for Prisons and Jails do not establish an Eighth Amendment violation. *See Rhodes v. Chapman*, 452 U.S. 337, 348 n.13 (1981) (noting that "such opinions may be helpful and relevant with respect to some questions, but 'they simply do not establish the constitutional minima; rather, they establish goals recommended by the organization in question'" (quoting *Bell v. Wolfish*, 441 U.S. 527, 543-544, n.27 (1979 )); *Wright v. Rushen*, 642 F.2d 1129, 1134 n.4 (9th Cir. 1981) ( noting that the preamble to the Federal Standards for Prisons and Jails stresses that "these standards should not be taken to be a statement of constitutional minima"); *Fillmore v. Ordonez*, 829 F. Supp. 1544, 1570 (D. Kan. 1993) *aff'd*, 17 F.3d 1436 (10th Cir. 1994).

Therefore, even assuming that Soder is correct about the defendants' violations of these standards, this alone does not state a § 1983 claim.

The Eighth Amendment prohibition against cruel and unusual punishment demands that prison officials do not house inmates under conditions that deprive them of basic human needs, *Helling v. McKinney*, 509 U.S. 25, 32, (1993), but it does not mandate that prisons be free of discomfort, *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). To violate the Eighth Amendment, conditions of confinement must be dangerous, intolerable, or shockingly substandard. *Riley v. Jeffes*, 777 F.2d 143, 147 (3d Cir. 1985); *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 757 (3d Cir. 1979).

"[T]o establish an Eighth Amendment violation an inmate must allege both an objective element – that the deprivation was sufficiently serious – and a subjective element – that a prison official acted with a sufficiently culpable state of mind, *i.e.*, deliberate indifference." *Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir. 1996) (citing *Wilson v. Seiter*, 501 U.S. 294 (1991)). "The objective inquiry is whether the inmate was 'denied the minimal civilized measure of life's necessities.'" *Fuentes v. Wagner*, 206 F.3d 335, 345 (3d Cir. 2000) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). To satisfy the subjective component, an inmate must show prove that a prison official demonstrated "deliberate

indifference" to a serious risk of harm to which the inmate was exposed. *Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994).  "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

In this case, Soder has not come close to alleging facts sufficient to state an Eighth Amendment claim.  Soder's complaints – (1) that he had to share a cell with another inmate, (2) that he was denied outside exercise time for 24 days, (3) that he never participated in a fire drill, (4) that his bed linens were stained, (5) that he was only provided a clean towel twice a week, (6) that the food was cold, (7) that prison supervisors did not visit his cell weekly, (8) that he was temporarily denied phone privileges and visitation; and (9) that he was denied work release – simply do not demonstrate objectively serious deprivations of basic life necessities.  *See, e.g., Rhodes*, 452 U.S. at 348 (holding double celling, does not violate the Eighth Amendment per se, unless it results in "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for human confinements."); *Williams v. Campbell*, 2008 WL 2816089, at *7 (E.D. Pa. July

18, 2008) (stating "[c]ourts in this circuit have held that deprivation of exercise for

a limited period of time without evidence of resulting harm to the plaintiff prisoner

does not violate the Eighth Amendment" and collecting cases); *Moultrie v. Oxley*,

2007 WL 1395435, at *7 (D.N.J. May 10, 2007) (holding denial of weekly sheet

exchange does not violate the Eighth Amendment); *Kot v. Matty*, 1991 WL

246906, at *2 (E.D. Pa., Nov. 15, 1991) (allegations of *inter alia* lack of clean

linens does not state Eighth Amendment claim); *Laufgas v. Speziale*, 263 Fed.

Appx. 192, 198 (3d Cir. 2008) (stating "there is no constitutional right to hot

meals"); *Georges v. Ricci*, 2007 WL 4292378, at *7 (D.N.J. Dec. 4, 2007) (stating

"loss of privileges, in general, does not amount to infliction of cruel and unusual

punishment; and loss of visitation and telephone privileges is no exception to this

rule"; collecting cases); *Goldhaber v. Higgins*, 2007 WL 2907209, at *31 (W.D.

Pa. Sept. 28, 2007) (holding prison restrictions on work release program do not

violate Eighth Amendment).

### 6.    Denial of Access to the Courts Claim

Soder's claim regarding the inadequacy of the prison law library is not

analyzed under the Eighth Amendment, but rather as a claim for denial of access

to the courts.[6] *See Christopher v. Harbury*, 536 U.S. 403, 412-13 (2002);

*Williams v. Lehigh Dep't of Corr.*, 79 F. Supp. 2d 514, 518 (E.D. Pa. 1999).  To

state a claim for denial of access to the courts, a plaintiff must assert an actual

injury by identifying the nonfrivolous, arguable underlying claim compromised by

the alleged denial of access.  *Christopher*, 536 U.S. at 415 (citing *Lewis v. Casey*,

518 U.S. 343, 353 (1996)).  "[T]he underlying cause of action, whether anticipated

or lost, is an element that must be described in the complaint, just as much as

allegations must describe the official acts frustrating the litigation."  *Id.*  The

underlying claim must be described with enough specificity "to apply the

'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim

is more than hope."  *Id.* at 416.

Soder has alleged no actual injury here.  Soder complains that the law

library contained only partial volumes of some books, that inmates could not save

material on computers but had to pay to print it, and that the library space was also

used for other purposes.  Soder alleges only that these deficiencies made it so that

he "could not defend himself against the Newest trumped-up charges."

Presumably the "trumped-up charges" are the ones that led to his incarceration.

---

[6] The basis for the right of access to the courts is unsettled, and decisions have grounded
the right in various constitutional provisions. *See Christopher*, 536 U.S. at 415 n.12.

Even if Soder's complaints about the law library can be considered inadequacies that denied him access to the courts (a big if), Soder fails to specify how these alleged inadequacies compromised a nonfrivolous claim, and therefore has failed to state a claim.

### F.   RICO Claim

Soder mentions RICO only in the prayer for relief of his complaint, and in his brief opposing the defendants' motion to dismiss explicitly states that "I did not file a RICO [sic] yet." (Doc. 18 at 14.)  Nevertheless, for the sake of completeness, the Court will note that Soder has not alleged any basis for a civil RICO claim.

The civil RICO statute allows "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter [to] sue therefor in any appropriate United States district court." 18 U.S.C. § 1964(c).  Section 1962, in turn, makes it unlawful to use income derived from racketeering activity to invest in or acquire or maintain an interest in any enterprise affecting interstate commerce, to conduct such an enterprises's affairs through a pattern of racketeering activity, or conspire to violate these provisions.  18 U.S.C. § 1962. The term "racketeering activity" is defined in 18 U.S.C. § 1961( 1 ) to include a long list of state and federal crimes.  Soder has not alleged any injury to his

"business or property" or successfully pled any "racketeering activity" by the defendants.  Any purported RICO claim will be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, the pending motions to dismiss will be granted, and Soder's complaint against all defendants will be dismissed.  Because dismissal is based on the grounds of immunity and the *Heck* doctrine, and because the near-frivolous nature of Soder's claims would make amendment of his complaint futile, dismissal is with prejudice.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).  An appropriate order will enter.